**PRETRIAL DIVERSION AGREEMENT**

1.  The Office of the United States Attorney for the Central District of California ("the USAO"), and L.E. Coppersmith, Inc. ("the Company"), hereby enter into the following agreement regarding the indictment filed against the company on December 2, 2010, alleging three counts of making a materially false statement in violation of 18 U.S.C. § 1001 and six counts of altering official documents in violation of 7 U.S.C. § 7734(a) ("this Agreement").  This Agreement is between the Company and the USAO, and does not bind any other party.

2.  An employee of Coppersmith, Inc., Berta Dare, whose position was to prepare the necessary documents for cotton exports and supervise two other employees doing the same, processed a large shipment to Bangladesh in December of 2005. The shipment contained many lots of cotton from various warehouses scattered across the United States.  A requirement for export of cotton from the United States is that it be inspected by an authorized government or private inspector and that the inspection certificate (Form 572) be submitted to the government to obtain a certificate known as a federal phytosanitary certificate (FPC).  Most countries of the world require that the inspection be performed within 30 days of shipment, and the government will not issue a FPC unless there has been an authorized inspection of the cotton within the time period

1

required by the importing country. Berta Dare mistakenly believed that Bangladesh allowed the inspection to occur within 30 days of shipment, whereas in fact Bangladesh requires that the inspection occur within 14 days of shipment.

3. On December 8, 2005, Berta Dare submitted to the PPQ inspector seven Forms 572 which were part of a single shipment destined for Bangladesh. The PPQ inspector noticed the Form 572's dates of inspection exceeded the 14 days required by Bangladesh and declined to issue a federal phytosanitary certificate. At this juncture the proper procedure for Berta Dare to follow would be to arrange for an additional inspection at the Los Angeles dock, perhaps rolling the shipment over to a later shipping date if necessary, or arrange for a re-inspection when the cotton destined for Bangladesh would be trans-shipped either in Singapore, Shanghai, or Hong Kong. Rather than using any of these routine procedures, Berta Dare, without any authorization of Coppersmith, Inc., used white-out correction tape on the seven Form 572's and wrote in her own hand seven false inspection dates which fell within the 14-day requirement of Bangladesh.

4. The company never authorized the alteration of the genuine inspection dates by Berta Dare, but accepts responsibility for these actions because she was an employee of the corporation at the time. After an investigation of all of

the facts and circumstances giving rise to the false statements, including the Company's background, record of past responsibility concerning public health and safety concerns, and effective historical current compliance programs, the USAO agrees that the interests of justice will be served by the procedure set forth below.

5. Accordingly, on the authority of the Attorney General of the United States, by André Birotte Jr., United States Attorney for the Central District of California, any prosecution in this District for the indicted offenses shall be stayed for a period of 12 months from the date this agreement is executed by all parties, provided that the Company abides by the conditions and requirements of the program set out below. By signing this Agreement, the Company agrees to each of the conditions and requirements.

6. Should the Company violate any of the conditions of diversion set forth above, the USAO may at any time: (1) revoke or modify any of the conditions of diversion; (2) lengthen the period of diversion; or (3) terminate diversion and reinitiate prosecution for the offense. Any decision to revoke, modify, lengthen, or terminate diversion rests solely with the USAO in its exclusive discretion. At the time the USAO makes any such decision, it will furnish counsel for the Company with written notice specifying the condition(s) of diversion the Company has

violated and the reasons why diversion is being revoked, modified, lengthened, or terminated.

7. Should prosecution of the Company for the offense be reinitiated by the USAO, the Company agrees that any period of delay in prosecution occasioned by this Agreement shall be excluded from consideration as to any rights the Company may have to a speedy trial under the Sixth Amendment to the United States Constitution, the Speedy Trial Act (18 U.S.C. §§ 3161 et seq.), the Federal Rules of Criminal Procedure (including Rule 48(b)), and/or the applicable statute of limitations.

8. If, upon completion of the Company's period of diversion, the USAO is satisfied that the Company has complied with all of the terms and conditions of this Agreement, then no prosecution for the indicted offenses will be instituted in this District by the USAO, and the USAO will move to dismiss with prejudice the indictment in this matter.

9. Should prosecution of the Company for the indicted offenses be reinitated by the USAO, the USAO agrees that neither this Agreement nor any information obtained from the Company as the result of the Company's participation in diversion will be used against the Company, except for impeachment purposes, in connection with any prosecution of the Company for the indicted offenses. Further, the Company will not use the Agreement in defense of the Company in connection with any criminal or

appellate action relating to the indicted offenses, or in any civil action against the USAO.

   10.   The obligations of the USAO under this Agreement are conditioned on the execution by the Company and its counsel of a stipulation, in a form to be prepared by the USAO, requesting a continuance of the trial date in this matter to a date beyond the period of diversion, and agreeing that the interim period is excludable pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161, et seq.

## CONDITIONS OF AGREEMENT

   11.   It is recognized by the Company and the USAO that routine supervision by the United States Probation Office, such as would occur in a usual Pretrial Diversion Agreement involving an individual defendant, is not practical.  Since the primary purpose of supervising oversight in this case is to ensure that the Company comply with public health and safety laws and regulations, it is more practical to ensure such compliance through supervising oversight by the USAO, which will be primarily effected by periodic reports, certifying such compliance, submitted by the Company to the USAO.  In connection with such oversight, the Company will maintain a public health and safety compliance plan that is reasonable and acceptable to the USAO.

   12.   Therefore, satisfactory completion of the Company's

obligations under this Agreement will be established by:

(1) The absence of any substantial report of noncompliance received by the USAO.

(2) Confirmation that the Company is maintaining the current compliance plan with no less than a 92% compliance rate as measured by the Company's AES compliance reports.

(3) The filing by the Company with the USAO, every 90 days, of a report providing either a certification that the Company has received no complaints from any agency charged with ensuring compliance with public health and safety laws and regulations, or, if the Company has received any such complaint, a description of said complaint and a certification that the Company has promptly complied with all requirements of the complaining agency and that the Company is in good standing with such agency. This report shall further certify that the Company has not, during the reporting period, falsely changed material information on federal phytosanitary certificate applications or other related official documents.

(4) The Company will pay to the United States Department of Agriculture a fine in the amount of $7,000, no later than May 31, 2011.

13. The terms and conditions of this Agreement, including waivers of any applicable statute of limitations and the rights to a speedy trial, have been explained to the Company by its

attorney. The authorized Company representative has read and approved this Agreement. The Company understands the conditions of this Agreement and will comply with them.

Dated: April 14, 2011          ANDRÉ BIROTTE JR.
                               United States Attorney


                               /s/ Melissa Mills
                               _____
                               MELISSA MILLS
                               Assistant United States Attorney

I am the attorney for L.E. Coppersmith, Inc. I have carefully discussed every part of this Agreement with my client. To my knowledge, my client's decision to enter into this Letter Agreement is an informed and voluntary one.

Dated: April 14, 2011         *Harland W. Braun*
                              HARLAN BRAUN
                              Counsel for L.E. Coppersmith, Inc.

I am the authorized representative for L.E. Coppersmith, Inc. I have read this Agreement and have carefully reviewed it with my attorney. I understand it, and on behalf of L.E. Coppersmith, I voluntarily, knowingly and willfully agree to all of its terms, including in particular the specified conditions of diversion. I have not been subjected to any force, threat, or coercion in agreeing to the terms of this Agreement, and no other promises or inducements have been made to me other than those contained in this Agreement. I acknowledge the Company's responsibility for the conduct described above. I am satisfied with the representation of my attorney in this matter.

Dated: April 14, 2011         *[signature]*
                              Lew E. COPPERSMITH II
                              Executive Vice-President of L.E.
                              Coppersmith, Inc.